**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David T. Schrock; Jodi M. Esch, | No. CV 11-0567-PHX-JAT |
| Plaintiffs, | **ORDER** |
| vs. | |
| Federal National Mortgage Association; CitiMortgage, Inc., | |
| Defendants. | |

Pending before the Court is a Rule 12(b)(6) Motion to Dismiss (Doc. 11) filed by Defendants Federal National Mortgage Association ("Fannie Mae") and CitiMortgage, Inc. ("CitiMortgage"). The Court has reviewed the parties' filings and considered the arguments and now rules on the motion.

**I.    BACKGROUND**

Near or on July 15, 2003, Plaintiffs David T. Schrock and Jodi M. Esch entered into a loan agreement with HomeAmerican Mortgage Corportation ("HomeAmerican") for the amount of $227,000. The loan was secured by a deed of trust on the real property located at 3510 W. Riordan Ranch Rd., Phoenix, AZ 85085 (the "Property").

During February 2009, Plaintiffs fell behind on their mortgage payments and began

1 attempts to modify their loan agreement with CitiMortgage.[1]  While Plaintiffs were
2 attempting to negotiate the terms of their loan, CR Title Services, Inc. ("CR Title") was
3 substituted in as trustee on the deed of trust and recorded a Notice of Trustee's Sale on July
4 30, 2009.[2]  Plaintiffs continued to work with CitiMortgage to modify their loan, and, in
5 August 2009, Plaintiffs allege that CitiMortgage agreed to a loan modification with reduced
6 monthly payments.  According to Plaintiffs, CitiMortgage assured them that documentation
7 of the modified agreement would come to them "at some point" (Doc. 1-2 at 5).

8 Representatives of CitiMortgage allegedly contacted Plaintiffs in September 2009,
9 informing them that there would be a three-month trial period for the loan modification.  If
10 Plaintiffs made each of the modified payments in a timely fashion, CitiMortgage would
11 extend the modification for the duration of the loan.  Once again, Plaintiffs claim to have
12 requested documentation of the modification, and claim CitiMortgage promised to provide
13 the documentation, but none was provided (Doc. 1-2 at 5).

14 Even though Plaintiffs received no documentation of the loan modification, they
15 continued to make the reduced payments according to the terms of the alleged oral
16 agreement.  Plaintiffs claim to have made repeated requests for documentation of the
17 agreement, but were never provided with it; however, CitiMortgage employees allegedly
18 encouraged Plaintiffs to continue making the reduced monthly payments.  From September
19 2009 to May 2010, Plaintiffs claim they made timely monthly payments according to the
20 terms of the oral agreement, all of which were received by CitiMortgage.

21 When Plaintiffs made their June 2010 modified payment, CitiMortgage rejected it.
22 Plaintiffs were informed by CitiMortgage that they were "not in the program anymore" (Doc.
23 1-2 at 6).  At this time, CitiMortgage advised Plaintiffs that a trustee's sale of the residence

---

[1] It appears undisputed on this record that CitiMortgage is the current lender.

[2] The original sale was scheduled for November 4, 2009.

1 was scheduled for June 12, 2010.[3]

On August 11, 2010, Plaintiffs filed for bankruptcy. On December 15, 2010, the Bankruptcy Judge granted CitiMortgage's Motion for Relief from the Automatic Stay. On January 24, 2011, CR Title, as trustee, sold the home to Defendant Fannie Mae. On February 23, 2011, Fannie Mae filed a forcible detainer action against Plaintiffs, seeking to evict them from the residence. On February 24, 2011, Plaintiffs filed for a temporary restraining order ("TRO") in the Maricopa County Superior Court. Defendants removed the TRO action to this Court on March 25, 2011. Defendants now seek to have Plaintiffs' entire Complaint dismissed for failure to state a claim, pursuant to the Federal Rules of Civil Procedure Rule 12(b)(6). Specifically, Plaintiffs have made claims for injunction against eviction, unlawful trustee's sale, breach of contract, promissory estoppel, wrongful foreclosure, tortious interference with use and enjoyment of property, and quiet title.

## II. LEGAL STANDARD

Defendants have moved to dismiss the Complaint (Doc. 1-2) for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Court may dismiss a complaint for failure to state a claim under 12(b)(6) for two reasons: 1) lack of a cognizable legal theory and 2) insufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Rule 8. Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Although a complaint attacked for failure to state a claim does not need detailed

---

[3] This sale date was the result of several postponements of the original Notice of Sale date. In all, the trustee postponed the sale 15 times before the property was finally sold.

- 3 -

factual allegations, the pleader's obligation to provide the grounds for relief requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The factual allegations of the complaint must be sufficient to raise a right to relief above a speculative level. *Id.*

Rule 8's pleading standard demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555). A complaint that offers nothing more than blanket assertions will not suffice. To survive a motion to dismiss, a complaint must contain sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Iqbal*, 129 S. Ct. at 1949. Facial plausibility exists if the pleader pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Plausibility does not equal "probability," but plausibility requires more than a sheer possibility that a defendant has acted unlawfully. *Id.* "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In deciding a motion to dismiss under Rule 12(b)(6), the Court must construe the facts alleged in a complaint in the light most favorable to the drafter of the complaint, and the Court must accept all well-pleaded factual allegations as true. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). Nonetheless, the Court does not have to accept as true a legal conclusion couched as a factual allegation, *Papasan*, 478 U.S. at 286, or an allegation that contradicts facts that may be judicially noticed by the Court, *Shwarz*, 234 F.3d at 435.

/ / /

/ / /

/ / /

/ / /

/ / /

# III. ANALYSIS

### 1. Count I - Injunction Against Eviction[4]

Plaintiffs' first count is not a cause of action, but rather a remedy that is dependent upon the success of their other causes of action. Therefore, the Court will not analyze this count under Rule 12(b)(6).

### 2. Count II - Unlawful Trustee's Sale

#### A. *Reinstatement of Loan and Notice*

As an initial matter, Defendants argue that Plaintiffs have statutorily waived all of their defenses and objections to the non-judicial foreclosure of the residence. A.R.S. § 33-811(C) reads in pertinent part as follows:

> all persons to whom the trustee mails a notice of a sale under a trust deed pursuant to § 33-809 *shall waive all defenses and objections* to the sale not raised in an action that results in the issuance of a court order granting relief pursuant to rule 65, Arizona rules of civil procedure, entered before 5:00 p.m. Mountain standard time on the last business day before the scheduled date of the sale.

A.R.S. § 33-811(C) (emphasis added).

Thus, § 33-811(C) requires Plaintiffs to assert any objections to and obtain injunctive relief from the trustee's sale prior to such sale or risk losing their rights to object. *See Spielman v. Katz*, No. CV 10-0184, 2010 WL 4038838, at *3 (D. Ariz. Oct. 14, 2010); *De Leon v. Recontrust Co.*, No. 10-8132, 2010 WL 4739954, at *3 (D. Ariz. Nov. 16, 2010). However, even if a trustee's sale of the property has already taken place, a foreclosed party does not forfeit certain notice objections. *See Martenson v. RG Financing*, 2010 WL 334648, *8 (D. Ariz. 2010) (citing *Schaeffer v. Chapman*, 861 P.2d 611, 614 (Ariz. 1993)). While § 33-811(C) plainly states that a party shall waive all defenses and objections to the sale if they do not timely file for a TRO, it requires as a prerequisite that the foreclosed party receive a proper notice of sale pursuant to A.R.S. § 33-809. Nevertheless, the "trustee's deed shall raise the presumption of compliance with the requirements of the deed of trust . . .

---

[4] While Plaintiffs' have styled their causes of action as "claims for relief," the Court will address each of the seven claims for relief as independent "counts."

- 5 -

relating to the exercise of the power of sale and the sale of the trust property," including notice requirements. A.R.S. § 33-811(B).

In this case, Plaintiffs did not timely file for a TRO prior to the trustee's sale. Indeed, they did not move for a TRO until February 24, 2011, one month after the property was sold to Fannie Mae. Defendants believe that this fact alone should foreclose the possibility of any objections to the trustee's sale. However, as noted above, the Plaintiffs maintain certain challenges related to deficiencies in notice.

Plaintiffs do not dispute that a proper Notice of Trustee's Sale was recorded by CR Title on July 30, 2009, pursuant to A.R.S. § 33-809 (Doc. 1-2 at 5). Instead, Plaintiffs' principal contention is that this original notice of sale was rendered ineffective when their loan was reinstated. Plaintiffs argue that the loan modification was a reinstatement of their loan and required a cancellation of the July 30, 2009 Notice of Trustee's Sale pursuant to the requirements of A.R.S. § 33-813 (Doc. 1-2 at 18). Thus, according to Plaintiffs, the July 30, 2009 Notice of Trustee's Sale could not serve as the basis for notice of the actual sale date on January 24, 2011.

Plaintiffs correctly point out that the deed of trust statutory framework allows for a loan to be cured and reinstated, thereby erasing any default. *Chaparral Dev. v. RMED Int'l*, 823 P.2d 1317, 1322 (Ariz. Ct. App. 1991) (pursuant to A.R.S. § 33-813 "reinstatement cancels the prior default"). *Chaparral* stands for the principle that a lender *must* reinstate a loan if a borrower cures the default prior to the trustee's sale. Plaintiffs take the argument further, alleging that A.R.S. § 33-813 does not preclude a borrower and lender from mutually reinstating the loan. Plaintiffs cite, by analogy, a California state court case that recognizes the ability to mutually reinstate a loan under a similar statutory framework. *Bank of Am. v. La Jolla Group II*, 28 Cal. Rptr. 3d 825, 829 (Cal. Ct. App. 2005). However, *La Jolla* is inapplicable in this case inasmuch as the lender in *La Jolla* did not dispute that the loan had been mutually reinstated. *Id.* at 828.

Plaintiffs also cite to *Herring v. Countrywide Home Loans, Inc.*, 2007 WL 2051394 (D. Ariz. 2007), to support the claim that their loan was reinstated. In *Herring*, the lender

- 6 -

and borrower negotiated a loan modification, and then reduced that agreement to writing. *Id.* at *1. While this Court agrees that mutual reinstatement of a loan is permissible, the present case differs from *Herring* in two respects. First, Plaintiffs' alleged loan modification in this case was not in writing. The Arizona Statute of Frauds provides that "[n]o action should be brought in any court" to enforce a contract "for the sale of real property or an interest therein," unless the contract is in writing and signed by the party to be charged. A.R.S. § 44-101(6). In Arizona, a mortgage is an interest in real property for purposes of the Statute of Frauds. *Freeming Const. Co. v. Security Sav. & Loan Ass'n*, 566 P.2d 315, 317 (Ariz. Ct. App. 1977). A mortgage loan agreement must therefore be in writing and signed to be enforceable. A modification to the material terms of a mortgage loan must also be in writing and signed by the party to be charged. *See, e.g., Best v. Edwards*, 176 P.3d 695, 698-99 (Ariz. Ct. App. 2008); *Executive Towers v. Leonard*, 439 P.2d 303, 305 (Ariz. Ct. App. 1968). Therefore, because the alleged loan modification was not in writing, this case differs from *Herring*.

The Court notes that Plaintiffs' argue that they are excused from the Statute of Frauds by promissory estoppel. As discussed below, Plaintiffs' claim for promissory estoppel has been waived by Plaintiffs' failure to obtain an injunction prior to the trustee sale. Thus, the question is whether Plaintiffs' claim for promissory estoppel can form the basis for reinstatement of the loan; thereby making the original notice of trustee sale defective under *Herring's* reasoning.

The Court finds that *Kelly v. NationsBanc Mortg. Corp.*, 17 P.3d 790, 795, ¶ 25 (Ariz. App. 2000) precludes Plaintiffs from arguing that the original notice of trustee sale was presumed by them to be defective. Specifically, *Kelly* holds that once a valid notice of trustee sale is issued, the burden is on Plaintiffs and Plaintiffs alone to stay informed about the status of the sale. Here, Plaintiffs attempt to abdicate any responsibility for knowing whether the sale had in fact been cancelled by arguing that it was effectively cancelled. The Court finds that this type of argument — i.e. that a properly noticed trustee sale was effectively (but not actually) cancelled by the bank's action — is the type of claim that is

1 waived if not raised, via obtaining an injunction, prior to the trustee sale. Thus, to the extent
2 *Martenson* holds that certain failures in the notice requirements survive the trustee sale, this
3 Court finds that the surviving notice claims are limited to cases where a foreclosed party did
4 not receive the required notice of the original trustee sale. In this case, there is no dispute
5 that Plaintiffs received timely notice of the original trustee sale.

6 Second, this case is distinguishable from *Herring* in that *Herring* was not deciding the
7 breadth of the waiver provisions of A.R.S. § 33-811(C). Instead, *Herring* was considering
8 the plaintiff's claim for wrongful foreclosure based on a sale in violation of the repayment
9 plan and concluded that the plaintiff's wrongful foreclosure claim survived the trustee sale.
10 Thus, *Herring* did not address whether many of the types of claims brought in this case
11 would be waived by not obtaining an injunction before the sale.

### B. *Improper Postponement of Trustee's Sale*

In addition to arguing that their loan was reinstated, Plaintiffs also allege that the foreclosure sale was illegally postponed in violation of A.R.S. § 33-810(B), thus rendering the trustee's sale unlawful (Doc. 1-2 at 18-19). This claim fails for several reasons. First, while a plaintiff maintains certain notice objections to a completed trustee's sale, *Martenson*, 2010 WL 334648 at *8, failure to properly notice a postponement of a trustee's sale is not one of them. The statutory provision which precludes all defenses and objections not raised prior to a trustee's sale only requires that the foreclosed party receive notice pursuant to A.R.S. § 33-809. A.R.S. § 33-811(C). The method for postponement of a trustee's sale is found in A.R.S. § 33-810(B). Thus, Plaintiffs' claim that the trustee's sale was improperly postponed is waived.

Second, Plaintiffs' allegation that the trustee's sale was procedurally improperly postponed at each set sale date is a mere conclusory allegation, and, more importantly, is not sufficient to overcome the statutory presumption of compliance with the requirements of the deed of trust statutes. A.R.S. § 33-810(B).

Third, inasmuch as Plaintiffs argue that postponement was improper because they were not personally given notice of the new sale date, such argument fails. There is no

- 8 -

statutory requirement that notice of postponement of a trustee's sale be given to a to-be-foreclosed party. *See* A.R.S. § 33-810(B); *see also Kelly*, 17 P.3d at 795.

In conclusion, the Court has reviewed the Plaintiffs' response to the motion to dismiss at pages 5 - 7, and does not find any specific facts or citations to the complaint detailing how Defendants in this case failed to comply with the notice provisions of the deed of trust statute in their original Notice of Trustee Sale. Instead, Plaintiffs' entire argument appears to hinge on the conclusion that their loan was reinstated, rather than any independent failure of notice claim. Because the Court finds that the reinstatement of the loan argument was waived by failing to obtain an injunction, the Court will not use that theory as the basis to find the original notice was invalid.

### *C. Illegal Assignment, Split Note, and "Show Me the Note" Theories*

The Plaintiffs' second count contains several other grounds on which they argue the trustee's sale was unlawful, including that the deed of trust was improperly assigned to Defendants CitiMortgage and Fannie Mae, that the note and deed of trust separated or split, and that Defendant CitiMortgage did note own or hold the note or deed of trust (Doc. 1-2 at 19-20). Because Plaintiffs did not raise these defenses and objections prior to the trustee's sale, they have been waived. A.R.S. § 33-811(C); *see also Spielman*, 2010 WL 4038838 at *3.[5]

---

[5] The Court also notes that these waived defenses and objections have been rejected by courts within the Arizona. *See, eg., Nichols v. Bosco*, No. CV 10-1872, 2011 WL 814916, at *4 (D. Ariz. Mar. 4, 2011) (rejecting a similar illegal assignment or broken chain of title claim); *Maxa v. Countrywide Loans, Inc.*, No. CV 10-8076, 2010 WL 2836958, at **3-4 (D. Ariz. July 19, 2010) (rejecting a claim predicated upon the theory that a note and deed of trust cannot be split); *Kane v. Bosco*, No. CV 10-1787, 2010 WL 4879177, at * 11 (D. Ariz. Nov. 23, 2010) ("the Court agrees with the unanimous authority within the District of Arizona, and dismisses Plaintiffs' claims based upon a 'show me the note' argument."); *Hogan v. Wash. Mut. Bank*, 2011 WL 3108343, ¶ 13 (Ariz. App. July 26, 2011) (rejecting "show me the note" argument).

### 3. Count III - Breach of Contract[6]

Plaintiffs' third count alleges that Defendant CitiMortgage breached the modified loan agreement (Doc. 1-2 at 21-22). The Court finds that this defense or objection to the trustee's sale has also been waived. A.R.S. § 33-811(C); *see also Spielman*, 2010 WL 4038838 at *3. Even if the claim has not been waived, Plaintiffs' have failed to state a claim for breach of contract.

"In an action on a contract plaintiff has the burden of proof to show, 1) a contract, 2) a breach, and 3) damages." *Thunderbird Metallurgical, Inc. v. Ariz. Testing Lab.*, 423 P.2d 124, 126 (Ariz. Ct. App. 1967). As discussed above, a modification to a loan agreement violates the Arizona Statute of Frauds unless it is in writing. *See, e.g., Best*, 176 P.3d at 698-99; *Executive Towers*, 439 P.2d at 305. Thus, a contract to modify a loan agreement must be in writing to be enforceable. In this case, Plaintiffs' breach of contract claim relies on the same facts used to allege reinstatement of the loan. The breach of contract claim, like the reinstatement claim, fails because the alleged oral modification of the loan agreement violates the Statute of Frauds unless an exception to the Statute of Frauds applies.

As discussed above, Plaintiffs argue that promissory estoppel cures the Statute of Frauds issue for their claimed oral modification. However, as is discussed in the next section, promissory estoppel as a defense to foreclosure was also waived by Plaintiffs failure to obtain an injunction prior to the trustee sale. Thus, Plaintiffs cannot rely on promissory estoppel after the trustee sale to argue breach of the underlying contract.

### 4. Count IV - Promissory Estoppel

Plaintiffs' fourth cause of action alleges a case of promissory estoppel against Defendant CitiMortgage (Doc. 1-2 at 20-21). Once again, the Court finds that this defense or objection to the trustee's sale has been waived by Plaintiffs' failure to obtain an injunction

---

[6]While the title of Plaintiffs' third count refers to breach of contract and their fourth count to promissory estoppel, it seems to the Court that a claim for promissory estoppel is stated under the third count and a claim for breach of contract stated under the fourth count. The Court will consider all relevant allegations in considering each cause of action.

- 10 -

prior to the sale of the property. A.R.S. § 33-811(C); *see also Spielman*, 2010 WL 4038838 at *3.

### 5. Count V - Wrongful Foreclosure

Plaintiffs' fifth count states a cause of action that has yet to be recognized in Arizona. *Herring*, 2007 WL 2051394 at * 5. Nevertheless, recognizing that other jurisdictions have recognized the tort of wrongful foreclosure, Arizona District Court judges have found it "appropriate to join those jurisdictions." *Id*.; *Hughes v. Wells Fargo Bank, N.A.*, 2009 WL 5174987, *1-*2 (D. Ariz. 2009); *Contreras v. U.S. Bank*, 2009 WL 4827016, *5-*7 (D. Ariz. 2009) (considering the elements of the tort of wrongful foreclosure without, "predict[ing] whether the Arizona Supreme Court would recognize the tort"). Furthermore, rather being a lost defense or objection under A.R.S. § 33-811(C), the tort of wrongful foreclosure is only ripe once a foreclosure sale has occurred. *Jones v. Bank of Am.*, 2010 WL 2228517, at *3 (D. Ariz. 2010). In keeping with those decisions, the Court considers Plaintiffs' claim for wrongful foreclosure.[7]

---

[7] There are strong policy reasons for the Arizona Court to recognize or reject the tort of wrongful foreclosure. In favor of recognizing the tort, as this Order highlights, is the strict Arizona statutory scheme in favor of lenders when a lender is foreclosing a property. As recounted above, once a lender properly notices a trustee sale, the lender has no duty to tell the borrow to when the sale has been postponed, and may postpone any given sale by only a day or two. Further, the lender can tell the borrower that a sale has been postponed indefinitely, and even if that is not true, it is the borrower's duty to stay abreast of when the sale will occur. Finally, even if the lender does not actually comply with the statutory procedures for postponement, the notice and sale is still presumed valid. The result of all this being, the borrower waives virtually all claims and defenses to the sale at the time of sale and must have been very savvy to overcome even the lender's potential misinformation regarding the remaining available time to seek an injunction. These draconian results perhaps favor allowing a borrower the much more favorable tort statute of limitations to bring a claim for wrongful foreclosure compared to what, hypothetically, could have been 24 hours between postponements with the lender having previously told the borrow the sale was indefinitely postponed. Conversely, the Arizona statutes' waiver provisions clearly evidence a legislative intent to make a trustee sale of real property final and not subject to challenges. To allow the tort of wrongful foreclosure, in many cases, would permit borrowers to avoid some of the strict waiver provisions by raising their otherwise barred claims and defenses in the wrongful foreclosure action.

Other jurisdictions have put forth varying definitions of the tort of wrongful foreclosure. Under Georgia law, the tort of wrongful foreclosure consists of: (1) a legal duty owed to the plaintiff by the foreclosing party, (2) a breach of that duty, (3) a causal connection between the breach of that duty and the injury the plaintiff sustained, and (4) damages. *Heritage Creek Dev. Corp. v. Colonial Bank*, 601 S.E.2d 842, 844 (Ga. Ct. App. 2004). Under Nevada law, a foreclosed party can state a claim for wrongful foreclosure if it can show "at the time the power of sale was exercised or the foreclosure occurred, no breach of condition or failure of performance existed on the mortgagor's or trustor's part which would have authorized the foreclosure or exercise of the power of sale." *Collins v. Union Fed. Sav. & Loan Ass'n*, 662 P.2d 610, 623 (Nev. 1983) (citing cases from California, Missouri, and Texas).

---

Obviously, this Court is bound by and would welcome any guidance from the Arizona courts on whether this is a viable cause of action. However, in the absence of such guidance the Court finds that the Arizona courts would recognize the tort of wrongful foreclosure based on the following hypothetical. If a lender intends to sell house A and gives notice to the borrowers on house A, but at the trustee sale makes a mistake in the legal description and actually sells house B, the owners of house B must have some remedy available to them. The two possible remedies would be: 1) to unwind the trustee sale for lack of notice; and/or 2) the tort of wrongful foreclosure. As discussed above, one Arizona District Court Judge has stated that certain defenses to lack of notice survive the trustee sale. *Martenson*, 2010 WL 334648 at *8. However, in an unpublished decision the Arizona Court of Appeals disagreed and said even lack of notice is waived. Thus, it is possible that the only remedy to this hypothetical under Arizona law is the tort of wrongful foreclosure. Under this hypothetical, recognizing the tort seems sound policy because, as many Plaintiffs have complained, the lender is not required to "show the note" or prove it is actually the lender to have a trustee sell the property; and, under the MERS system, someone reviewing the chain of title could not ascertain the actual lender. *See* footnote 5 supra; *see also Cervantes v. Countrywide Home Loans, Inc.*, 2009 WL 3157160, *10-*11 (D. Ariz. 2009) (discussing how the Mortgage Electronic Registration System (MERS) works). Because the Court is convinced the "wrongfully foreclosed" owner of house B must have a remedy in this hypothetical, the Court finds the Arizona courts would recognize the tort of wrongful foreclosure. Further, this result preserves the spirit of *Schaeffer v. Chapman*, 861 P.2d 611, 614 (Ariz. 1993), repeal of which, as *Martenson* noted, was not likely the intended result of the legislature in the 2002 changes to the deed of trust statutes that were, "promoted as pro-consumer." *Martenson*, 2010 WL at *8. The next question is determining what elements the Arizona courts would require a plaintiff to plead to state a claim for this tort.

In *Herring*, the Arizona District Court Judge used the Georgia standard, first finding that, "wrongful foreclosure ... exists as a statutory duty.... to exercise fairly and in good faith the power of sale in a deed to secure a debt." 2007 WL 2051394 at *5 (internal quotations omitted). Further, applying the Georgia standard, the legal duty owed by the lender would be to exercise the power of sale in compliance with the deed of trust statutory framework. *See id*. As discussed in Count II, much of Plaintiffs' argument rests on the contention that their loan was reinstated, and, therefore, Defendant CitiMortgage violated the statutory framework by proceeding with the sale.

Under the Nevada standard, Plaintiffs' would have to successfully allege that they were not in default in order to state a claim for wrongful foreclosure. *Collins*, 662 P.2d at 623. Plaintiffs' entire claim that they were not in default rests on their arguments of reinstatement of the loan, breach of contract, and promissory estoppel. Above, this Court held that the Plaintiffs' promissory estoppel theory, which is the underlying basis for both their reinstatement and breach arguments, was waived by their failure to obtain an injunction prior to the sale. However, to determine whether Plaintiffs can state a claim for wrongful foreclosure, the Court must determine whether they have a promissory estoppel theory on which they can rely to argue that they were not in default on their loan.

Specifically, as discussed above, Plaintiffs reinstatement claim is barred by the Statute of Frauds. However, a party can assert a claim for promissory estoppel when the Statute of Frauds would otherwise apply, if "the party asserting the Statute of Frauds defense has misrepresented that the statute's requirements have been met or promises to put the agreement in writing." *Mullins v. S. Pac. Transp. Co.*, 851 P.2d 839, 841 (Ariz. Ct. App. 1992). Thus, the Court will consider whether Plaintiffs state a claim for promissory estoppel.

In order to state a claim for promissory estoppel, Plaintiffs must show that: (1) Defendant made a promise to Plaintiffs; (2) Defendant should have reasonably foreseen that Plaintiffs would rely on that promise; (3) Plaintiffs actually relied on that promise to their detriment; and (4) Plaintiffs reliance on the promise was justified. *Higginbottom v. State*, 51 P.3d 972, 977, ¶ 18 (Ariz. Ct. App. 2002). Plaintiffs' allege that a promise to modify their

loan agreement was made (Doc. 1-2 at 20). Although such an oral promise is typically barred by the Statute of Frauds, Plaintiffs' allege that Defendant CitiMortgage promised to put the loan modification into writing (*Id.* at 5). The alleged promise would defeat the Statute of Frauds requirement and allow a claim for promissory estoppel to go forward. *Mullins*, 851 P.2d at 841.[8] Furthermore, Defendant CitiMortgage could have reasonably foreseen that Plaintiffs would rely on its promise to modify the loan agreement. Next, it is undisputed that Plaintiff relied on this promise to their detriment by making the modified payments for ten months (the tenth payment was rejected).[9] During these months, Plaintiffs

---

[8] Defendants also argue that the language of the parties' loan also requires any modifications to be in writing. However, the Court finds that promissory estoppel, if proven, would also overcome the writing requirement of the note itself, in addition to the writing requirement of the Statute of Frauds.

[9] The Court notes that in considering a motion to dismiss in a factually similar case, an Arizona District Court judge found that the plaintiffs' modified loan payments had been rejected well in advance of the actual trustee's sale. *Mundinger v. Wells Fargo Bank*, 2011 WL 1559423, at * 3 (D. Ariz. Apr. 25, 2011). That Court relied on that fact to find that the plaintiffs had not relied to their detriment; the Court opined that "[r]ather than being induced into complacency [in defending against foreclosure], plaintiffs took steps to avoid foreclosure." *Id.* In this case, there is also a significant lapse of time between when Plaintiffs' allege that their modified loan payments were first rejected in June of 2010 (Doc. 1-2 at 5) and when the trustee's sale occurred — January 24, 2011 (*Id.* at 7).

The Court in *Mundinger* concluded that the lapse of time between the misrepresentations and the sale effectively cured any previous detrimental reliance because it gave Plaintiffs an opportunity to act. Certainly there is a great deal of logic to that approach — that the detrimental reliance must end when new facts are presented. However, for this Court to follow this same approach, this Court must conclude that any previous misrepresentations to the borrower (or, accepting Plaintiffs version of the facts as true, out right lies to the borrower), are all overlooked and Plaintiffs cannot state a claim, so long a there is a lapse of time between the last lie and the sale. For purposes of a 12(b)(6) motion, this Court disagrees with *Mundinger*. For example, the Plaintiffs' reliance in making ten months of payments is not cured by the lapse of time (in *Mundinger*, the defendant returned all but three of the modified payments). The Court cannot, on a 12(b)(6) record, conclude that Plaintiffs would have continued to make even the modified payment amount had Defendants told them that they were not eligible for a modification, or that their modification had been rejected. Further, on a 12(b)(6) record, the Court cannot conclude that there would not have been other alternative actions that Plaintiffs may have taken had they not been mislead into thinking they had in fact received a modification. *See Waugh v. Lennard*, 211

did not seek alternative financing, an injunction to block the foreclosure, or alternative housing, relying on Defendants representations that they received a modification. Finally, Plaintiffs were justified in relying on Defendants' agents statements that they had received a modification, particularly considering that Defendants both accepted the modified payments and in fact postponed the trustee sale.

Now returning to the elements of wrongful foreclosure, the Court finds that because Plaintiffs have stated a claim for promissory estoppel, Plaintiffs have stated a claim that they were not in default on their loan because they timely made all modified payments under the modified agreement. Thus, Plaintiffs state a claim under the Nevada standard.

Applying the Georgia standard, Defendants owed a duty to Plaintiffs to act in good faith and that duty was breached if Defendant foreclosed even though Plaintiffs were not in default on their modified loan. There is a causal connection between the breach, i.e. the foreclosure of the not-in-default loan, and Plaintiffs' harm of their house being sold and possible emotional distress. Finally, Plaintiffs are damaged by both losing their home, and being induced into making payments that they might not have otherwise made (payments which may have been barred by the anti-deficiency statute had Defendants told Plaintiffs they would not be eligible for modification).[10] Thus, accepting Plaintiffs' version of the facts as

---

P.2d 806, 812 (Ariz. 1949) (forbearance from taking alternative actions can be detrimental reliance). Moreover, if the duty of good faith discussed in *Herring* means anything, it seems it must mean that foreclosing party cannot, again accepting Plaintiffs' version of the facts as true, lie to borrower repeatedly with no ramifications. Thus, even though there was a lapse of time here between the rejected modified payment and the sale, the Court finds Plaintiffs still state a claim of detrimental reliance.

Finally, the Court finds Plaintiffs' argument at oral argument on this point compelling. Specifically, Plaintiffs argued that before the June 2010 payment was rejected, promissory estoppel had already occurred — i.e. Plaintiffs were entitled to the modified contract. Therefore, the Court should not consider any of Defendants' actions after promissory estoppel arose. For purposes of this 12(b)(6) motion, the Court agrees.

[10] The Court notes that on summary judgment, another Court in this district held that modified payments could not equate to damages because Plaintiffs were permitted to live in the house. *Steel v. JPMorgan Chase Bank, N.A.*, CV 10-2263-PHX-RCJ, 5-6 (D. Ariz. May

true, the Court finds that Plaintiffs state a claim for wrongful foreclosure.

### 6. Count VI - Tortious Interference with Use and Enjoyment of Property

Plaintiffs' sixth count attempts to state a claim for tortious interference with the use and enjoyment of property (Doc. 1-2 at 23-24). However, neither in the Complaint nor in Plaintiffs' Response to Defendants' Motion to Dismiss do Plaintiffs set forth what the elements of such a tort would be; likewise this Court is unable to find an analogous case which recognizes such a tort. The Arizona cases Plaintiffs cite all focus on the issue of whether loss of property can support damages for emotional distress. *Farr v. Transamerica Occidental Life Ins. Co.*, 699 P.2d 376, 382 (Ariz. Ct. App. 1984) (recognizing ability to collect damages for emotional distress where insurance company refused to pay benefits); *Jeter v. Mayo Clinic Ariz.*, 121 P.3d 1256, 1272-73 (Ariz. Ct. App. 2005) (recognizing ability to collect damages for emotional distress where plaintiffs' pre-embryos were negligently destroyed); *Reed v. Mitchell & Timbanard, P.C.*, 903 P.2d 621, 627 (Ariz. Ct. App. 1995) (declining to allow emotional distress damages in the context of legal malpractice); *Thomas v. Goudreault*, 786 P.2d 1010, 1018 (Ariz. Ct. App. 1989) (holding that emotional distress damages are allowed under the Uniform Residential Landlord and Tenant Act). Significantly, none of the cited cases recognizes a claim for tortious interference with the use and enjoyment of property in the context of a lender exercising the power of sale in a non-judicial foreclosure under the deed of trust statutory framework. On this record, the Court will not recognize such a tort in the current case. Thus, the Court finds that Plaintiffs have failed to state a claim for tortious interference with the use and enjoyment of property.

### 7. Count VII - Quiet Title

Plaintiffs' seventh count is, like Count I, predicated upon the success of their other

---

12, 2011). Again, because on a 12(b)(6) motion the Court cannot determine whether the fair market value rent of the house and the modified payment amounts are equal, the Court will not dismiss on this basis. Moreover, it is possible the tort of wrongful foreclosure includes additional damages such as emotional damages or injunctive relief. However, in the context of a 12(b)(b) motion, this Court need not decide Plaintiffs' possible damages.

causes of action. An action to quiet title is a claim for equitable relief whereby plaintiff seeks to bar defendant from claiming any right or title adverse to the plaintiff. A.R.S. § 12-1102; *Kennedy v. Morrow*, 268 P.2d 326, 328 (Ariz. 1954). Because the Court did not dismiss the wrongful foreclosure claim, the Court will not dismiss the quiet title claim. However, if Plaintiffs amend their complaint, or at summary judgment, the parties should address whether *Chapman v. Deutsche Bank National Trust Co.*, No. 10-15215 (9th Cir. June 23, 2011) has any bearing on this Court's ability to adjudicate a quite title action.

### 8. **Leave to Amend the Complaint**

In this case, Plaintiffs have not amended the Complaint as a matter of right pursuant to Rule 15 of the Federal Rules of Civil Procedure. Defendants CitiMortgage and Fannie Mae filed the Motion to Dismiss on April 8, 2011 (Doc. 11). Because the 21-day time frame to file an amendment following a motion to dismiss has expired, Plaintiffs have lost the right to amend the Complaint once as a matter of course. Fed.R.Civ.P. 15(a)(1). Defendants have requested the Court to grant their Motion to Dismiss with prejudice. However, the Ninth Circuit has instructed district courts to grant leave to amend, *sua sponte*, when dismissing a case for failure to state a claim, "unless the court determines that the pleading could not possibly be cured by the allegations of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). There is a "longstanding rule that '[l]eave to amend should be granted if it appears at all possible that the plaintiff can correct the defect.'" *Id.* at 1129 (quoting *Balistreri v. Pac. Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1990)).

Although the Court has denied the motion to dismiss as to two claims, the Court finds the reasoning of the Court of Appeals still applies as to the dismissed claims. Thus, Plaintiffs will be given a reasonable opportunity, if they so choose, to amend the Complaint to cure the deficiencies identified in this Order.

### IV. **CONCLUSION**

For the reasons set forth above, the Court will grant in part and deny in part the pending Motion to Dismiss, and will permit Plaintiffs to file an amended complaint.

- 17 -

Accordingly,

**IT IS HEREBY ORDERED** that the Defendants' Motion to Dismiss (Doc. 11) is **GRANTED in part and DENIED in part**; the motion is granted as to all claims except the wrongful foreclosure claim and the quiet title claim.

**IT IS FURTHER ORDERED** that Defendants' request for attorney's fees is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs may file an amended complaint no later than 21 days from the date of this Order. If Plaintiffs do not file an amended complaint within 21 days, then this case will proceed on only the wrongful foreclosure claim and the quite title claim. If no amended complaint is filed, Defendants shall answer within 30 days of the date of this Order.

DATED this 2nd day of August, 2011.

/s/ James A. Teilborg
James A. Teilborg
United States District Judge